are now up. Ms. White can you hear me? Yes, I can. Can you hear me? Yes. Mr. Freeman, can you hear me? I hear you. Thank you. Judges, counsel are prepared to argue. Judge Hart may now call the case. Very good. Thank you. I hope no one has any objections that my mother is listening in on the YouTube streaming. She's a big fan of Judge Moritz. And now call the case 1947 Craft Smith v. EC Design. Ms. White, would you please begin? Yes. Thank you, Your Honor. Good morning. This case is about planners, but not just any planners. It is about the OG of colorful creative crafting planners, the best in class, that transcending life planner that was designed by Aaron Condren. Now the district court committed several reversible errors when it granted summary judgment to Craft Smith and Michael Storrs on both of EC Design's infringement claims. Today, our argument will focus on three main issues. First, that the life planner compilation, when viewed as a whole, is protectable subject matter under the Copyright Act as a literary work with graphical elements. Second, that the district court erred in granting summary judgment on substantial similarity between the life planner compilation and the recollections planner in two ways. First, by applying the wrong standard, and then by comparing the wrong elements. And finally, that the district court erred when granting summary judgment on secondary meaning for the life planner trade dress, based on improper, out-of-circuit precedent, and in the face of compelling evidence of an intent to benefit from the life planner's reputation and goodwill, as well as other evidence of secondary meaning, and in the face of material disputes of fact regarding the meaning of that intent evidence. Turning to the first question is whether the life planner is a protectable subject matter under the Copyright Act. First, I'd like to ground our discussion by briefly describing the actual copyrighted work at issue here. This compilation comprises all of the that has been selected, coordinated, and arranged within the life planner. Importantly, it is not merely a subset of these elements. The copyrighted work in this case is not limited solely to the material that was actually copied by Craftsmith and Michaels. That is not how we define or analyze copyrighted works for purposes of satisfying the protectability question, and the district court committed a fatal error when it chose to proceed in that manner nonetheless. The life planner compilation is plainly a literary work. Like all literary works, it contains textual matter, data, and information. It contains numbers. True, it also contains graphical, artistic elements that have been selected, coordinated, and arranged along with those literary elements, but there's nothing novel or remarkable about that. It's like other types of collective works, such as newspapers or encyclopedias, where the pre-existing materials and data may consist of both literary and visual authorship. The presence of multiple forms of authorship does not render it unprotectable. This conclusion is entirely consistent with what the Ninth Circuit found in Harper House v. Thomas Nelson, where a very similar product, a day planner, was examined and deemed to be copyrightable subject matter. Notably in that case and in the District of Colorado's case, DataWorks v. Comlog, all of those compilations had previously been registered by the Copyright Office, so there's no question as to whether or not the Copyright Office itself has been presented with planners like this and has deemed them protectable subject matter. Let me take a step back and just consider copyright law as a concept. The theory that I'm running into in the case is that copyright doesn't protect someone from having ideas stolen, the expression of those ideas. I think we can agree that it looks like planners this way, but that's not a violation of the copyright that EC Design had. You see, to me, when you get down to what you're saying was copied regarding expression, it's very minimal stuff. Can you address that? Yes, Your Honor. Obviously, I don't dispute that it is just the expression of the ideas that is protectable under copyright law, but the important thing to focus on this case is what expressions protect it, and it is those creative decisions about what to include, where to include it, and how to include it in this planner. What was taken here was a wide swath of those same creative decisions. It's not the idea that we're disputing. It's the exact way that idea has been executed, so to speak. They selected the same monthly and weekly calendar formats, and that's a very abstract way of saying they picked the same two-page calendar format with the same size border at the top, the same squares, the same columns on the side and the bottom, and they showed that they actually copied exactly the formats for the monthly calendar and for the weekly calendars. The measurements line up exactly, so they are selecting identical material, and they're laying it out in the same manner, and it's those choices. Counsel, excuse me. Yes. Let me give you a hypothetical. Say someone comes up with the idea of printing a book of the 100 greatest swimming golfers and has a format for it. It explains and starts with some biography, then the statistics, whatever the format. Then someone else prepares a book of the 100 greatest male baseball players and uses the identical format. Would that be a violation of the copyright law? No, because the subject matter, the actual data, the actual sort of pre-existing material, so to speak, if that's what we're talking about, if we're using that as a collective work analogy, it's... To the selection of a format. There is a very similar format, but is that predictable? Does that mean no one else can organize, can have an organizer that has been structured in this in this order as long as it's not, as long as the pictures aren't copied, the little sayings aren't copied, and so on? Isn't that an idea as opposed to an expression? So what was copied here was not, what we're alleging was copied is not the sort of format, so to speak. Notions of format and particularly as described by the Copyright Office are limited to sort of simple schemes as visual works, and even the Copyright Office acknowledges that once there is a selection and arrangement of particular elements within a certain, shall we say, format, copying of those particular elements arranged in the same way and coordinated with the same other features, that is where the expression lies, and that is where the infringement lies. So in the analogy to say the women golfers versus the male golfers, once you change it to male golfers, you have changed one of the core pieces of pre-existing data that had been selected and arranged, and so then it becomes a sort of a key question of fact, is changing from male to female golfers enough to sort of move beyond substantial similarity in that expression? To be frank, if they came up with a very creative way of structuring the bios and the statistics and the other data about the women golfers in a very creative way of arranging it, merely substituting male golfers may not be enough to avoid an infringement of anything. It's the selecting and arranging and coordinating of these particular elements which is why it's so important to attend to the fact that it was the same vertical layout that Erin Condren herself had designed years ago, with the same banners in the... Yes? Also, we're not on a bench where we can wave and start asking questions, so you're speaking very fast and continuously. I need to interrupt you so that Phillips can ask any questions if he has some. Thank you. Just to follow up, the notion of protected elements versus layout, can you speak to this? The Copyright Office rejected the copyright on the layout, saying it's not a copyrightable type of authorship, but instead a template of expression, and when you talk about columns and sizes and all of that, I think everybody agrees that there was copying going on here, but if the Copyright Office says we reject the copyright on the layout on those sorts of things, where does that leave you? Could you please speak to that? Yes, and first I would... We do not believe that the Copyright Office rejected that claim. What the Copyright Office did was respond to a claim that simply asserted layout, which is a term of art for the Copyright Office that refers to any sort of layout, and so the Copyright Office responded and said, well, you're going to need to explain that, and counsel did. Counsel said what I meant was the selection and arrangement of the art and the quotations that's the new matter in this conclusion of the Copyright Office and that communication with counsel only goes to the new matter in the derivative work, and I think that's an important distinction to draw. There was never in that instance an effort to register the compilation of the entire underlying work because it had been previously published. It could not be claimed in that registration because it's previously published matter, so that statement by the Copyright Office is really in opposite to what we're talking about here, and so our position... Okay. Did you want to follow up? Was there another question? Judge Phillips, did you have a follow-up question? I couldn't tell. No, I have no further questions. Judge Moritz, would you like to ask questions? I do have a question. I'm going to move to the super substantial similarity test, and if I understand your argument, if you sit there, you're suggesting that we abrogated somehow the test in Jacobson. Can you address why you think that's so, and assuming we didn't abrogate it, I don't really see that you're arguing anything other than that it's a fact question. Does that make sense? Yes, Your Honor. I think. I think. I think what the Tenth Circuit did in Jacobson v. Deseret Book was clarify that there is no singular rule with regard to some sort of categorical, thin or fact-based works test, and that to the extent there was a suggestion otherwise in prior case law, Jacobson clarified that it really is just a substantial similarity test, and that that test provides all of the tools needed to evaluate anything from a very creative, very, shall we say, rich copyright to a much thinner or more fact-based work. There's no need for some sort of super substantial similarity test in the Tenth Circuit. I think they make a good point, or Kraft Design makes a good point, that really what we did here was just say that the quantum of similarity changes depending on the level of creativity, and in that particular case, of course, there was a memoir that was involved recounting prisoner of war experiences, I think, but there's certainly a big difference here between the original expression in that case and what we have here in the planner, and so it seemed to me that we are still applying the substantial or the super super substantial similarity test in the case like this, where there's just simply minimal creativity. Well, did you really address that test, or are you really just arguing it's a fact question? Well, I think that the reason we felt the need to clarify that super substantial similarity is not the mandate of this circuit is because it tends to encourage fact finders to focus on the differences like Judge Benson did here and perform more of a quantitative test instead of a qualitative test, because ultimately the question on summary judgment for substantial similarity is whether or not the copying is so minor that it is beyond the outer limits of substantial similarity, and without the discipline that is required by the sort of, you know, sort of a fulsome development of a substantial similarity test, then you fall back on sort of classic sins like comparing the differences and not the similarities, failing to compare the actual expression in the work itself like Judge Benson did. So that's why we think it is important to understand that there's no need to argue for some sort of higher burden of proof here. Thank you. Your time has expired, counsel. Judge Phillips, did you have any further questions? No, thank you. Fine. We'll hear from Appali then. Good morning, Your Honors. This is Parrish Freeman for the Appalese, Craftsmith, and Michaels. I'll address the copyright issues first and then turn to the trade dress issues. EC says the district court's legal error is that it failed to analyze the life planner as a whole in evaluating it for compilation copyrights, and EC says the court should have looked at everything, including the art and text that were not allegedly copied. Now, this is a compilation case, as we've been discussing, but you still have to identify the protectable expression, just as in any other case, any other copyright case. The test is not whether Craftsmith copied unprotectable or unprotected material. It's whether Craftsmith copied elements that the law recognizes and protects. Protectability in the compilation context means you identify the pre-existing materials or data that you collected or assembled, and you explain how those pre-existing materials or data have been selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship. The resulting work is the collection of the pre-existing material or data that you identified. If it is integrated into a larger volume, that does not mean the larger volume is the resulting work. Take the Supreme Court. The copyright owner in that case had registered its entire telephone book with the Copyright Office, which included yellow pages, advertisements, front cover design, back cover design, and various headings. And the Feist Court noted the mere fact that the work is copyrighted does not mean that every element of the work may be protected. You have to identify the protective expression and compare it against what was allegedly copied. And the only part of the phone book that was allegedly copied in Feist was the white pages, so the copyrightability analysis was limited to the white pages. Court never looked at compilation rights in the phone book as a whole, just in the white pages list as a whole. The issue was not whether Feist infringed because it too was offering a telephone directory in the same geographic area having white pages, yellow pages, and cover art. So it's not legal error to focus the compilation copyrightability analysis on the elements that were allegedly copied. Now the copied material in this case is just the selection and arrangement of types of planner parts. It's the general format or layout or template of the Life Planner. It's the idea for the entire combination. EC never really clearly says this, but we know that's their claim because they don't accuse CraftSmith of copying any specific cover art or internal art or text other than the names of months and days which are not protectable. They also say there's no difference between the 2016 version of the Life Planner and the 2017 version as far as copyrightable elements, and those versions have different artwork and different selection of inspirational short phrases. The only commonality between them is the general template arrangement of the types of planner parts. Now EC's job at summary judgment was to show that that selection and arrangement qualifies as an original work of authorship under section 102. Now if they don't really challenge, and we showed in our response brief that they don't get any copyrights associated with the format or the template or the book design, and they never really challenged that, and I think I heard them just agree with that proposition. Instead they say that they've got literary compilation rights because of the calendar elements. Well that's specifically ruled out in the regulations. You can't have copyright compilation or otherwise in the days of the week or the organization of the months of the year. That organization is not creative or expressive. It's dictated by common property principles. They also say they've got literary copyrights in the selection of short phrases, and we don't dispute that, but we're not accused of taking their selection of short phrases. We're accused of taking the idea of the selection of short phrases, and you don't get copyrights in ideas. Yes, Your Honor? This is Judge Hart. Perhaps they did concede it. I'm not sure they did during our argument, but why isn't the selection of the proper size and structure, essentially the format here, why is it not protected? Well because the arrangement, the compilation as a whole has to result in a work of authorship, and a work of authorship has to be, those are listed in section 102A, and that includes literary works. It includes pictorial, graphical, and sculptural works, and all manner of music and other things, but it doesn't include arrangements of shapes. It specifically excludes ideas, and that's really what an arrangement of shapes is, unless a format can be original if it's a unique format of some sort, but if it's a non-expressive arrangement of shapes, then it's considered a template of expression, and if you protect that under copyright law, then you're limiting creativity. You're not enhancing it. Judge Phillips, do you have any questions? No questions so far, no. Thank you. Judge Moritz? I have none so far. Okay, go ahead, counsel. So the District Court did not err in determining that the material that E.C. claims was copied does not amount to a section 102 original work of authorship as a matter of law. That brings us to the substantial similarity analysis. E.C. says the court erred in applying the super substantial similarity standard often associated with compilation cases. Let's assume for the sake of argument that the proper framework is substantial similarity rather than super substantial similarity because it is a sliding scale, and we acknowledge that, but we can't really get into the details of that because we don't know specifically what their protected expression is. Let's just assume it's just super substantial similarity. Under that framework, not only do you have to identify what was copied and show how it is protected expression, you also have to have evidence that it was material of substance and value that constitutes a substantial portion of the work. E.C. failed to come forward at summary judgment with a clear articulation of what is protected expression and also failed to come forward with any evidence that it was material of substance and value and a substantial portion of the work. So the District Court committed no legal errors in its copyrightability analysis, and E.C. failed to come forward with evidence of substantial similarity. Entry of summary judgment was appropriate for those reasons and should now be affirmed. I'll turn now to the trade dress issues. This is a product design trade dress case. That's very important. It's not a trademark case. It's not a product packaging trade dress case. The issue on appeal is solely whether E.C. presented evidence sufficient to generate issues of material fact as to secondary meaning in the asserted product trade dress, product design trade dress, and it's undisputed that there's no direct evidence of secondary meaning in this case. There's no survey evidence. There's no consumer testimony. There's no actual evidence of actual confusion. E.C. has to make its case completely on the circumstantial evidence, and that's certainly possible in theory, but you need evidence that tends to show the public recognizes the asserted design elements of the life planner trade dress as a source identifier and not just as an attractive design for the planner product. At pages 61 and 62 of its opening brief, E.C. has identified 11 elements of its product design trade dress. These are conventional size, shape, and content elements in general. There's no specific color or image or artwork identified. To put the issue of secondary meaning to a jury, the evidence that E.C. presented must create a genuine issue of material fact that these 11 elements of product design serve primarily as a source identifier or that the public associates these 11 elements with a single source. Courts and scholars have uniformly observed that this is really hard to prove, that it is really hard to prove secondary meaning in a product design trade dress case. That's because it's really hard to show product design is a source identifier and not just an attractive or useful design. There's no 10th Circuit product design case on point, but there are also no cases anywhere disputing or criticizing the cases and authorities we cited in our brief on this point. E.C. came forward with no survey evidence, no consumer testimony, no expert testimony, no evidence of actual confusion, but the evidence that they did come forward with all suffers from the same shortcoming. It's all general to the life planner of the product and not connected in any way and not highlighting in any way the 11 element product design trade dress. E.C. sales and advertising evidence, for example. That's the type of evidence that might suffice to create a fact issue in a traditional trademark case or product packaging case where there's no question that the logo or the word mark or the distinctive packaging elements are being used to identify a source. So big sales and advertising numbers mean lots of exposure to the trademark and to the packaging, but that can't be said in a product design trade dress case, especially in this case where the majority of the 11 elements are hidden on the inside of the life planner. E.C. did not present any evidence that the sales were stimulated by the product design as a source identifier versus being stimulated by the product design as just a desirable product configuration. E.C. did not present any evidence of advertising that called attention to the 11 element product design as a source identifier, nor did E.C. present any evidence. Let me interrupt you for a moment just to make sure that no other member of the panel has any questions at this time. No question here, Judge Phillips. I do. I do have a question. If I could go ahead, this is Judge Moritz. And I'm concerned that it didn't seem that the district court addressed what looked like some pretty powerful evidence here on customer recognition. There was quite a bit of evidence about from online customers, which is where they sell their planner, that people right away recognize the recollection planner as a dupe or a knockoff of the life planner. It has very strong customer recognition, the life planner does. And doesn't this show that customers who saw the recollections planner very quickly associated it with E.C. designs planner? And isn't that problematic? And doesn't that strong evidence on their trade dress claim? Well, we don't know why they made that connection. There's no evidence that it was because of these 11 elements. Well, it's the combination of elements. I mean, I guess I don't understand what you're saying there. What would they have to show? I mean, do they have to have evidence that it was some particular aspect of the design, some single aspect of it? Isn't it just the overall design? I think they'd have to have evidence. I mean, the trade dress? Right. And I think they'd have to have evidence that the trade dress has been consistently used over a long period of time. And in this case, we have- Well, that's not addressing my question about whether the district court, the fact that it didn't address what is pretty strong evidence and what should you do about that? Well, one reason it might not have addressed it is because, I don't know which specific document you're referring to, but so much of what they refer to in their appeal brief was brought in at the summary judgment stage. It was produced late. It was not authenticated. It's people out in the public and just general internet things coming down. And these people were not subject to deposition or anything like that. So we don't know why they had the recognition that they had. We objected to that evidence and the district court didn't indicate whether he ruled on the objections or not. Thank you. I'm sorry. I thought that was my final bell. That's the three-minute warning. Okay. So that is one possible explanation for why the district court didn't confront it directly. It also tends to underscore that there's no confusion at all. People clearly were able to see the difference. And we don't know why that they formed the impression that they have. Has it been because over the years they've seen a combination of colorful elements and coils with Erin Condren's name on it? Because it's got her name on it. Her name's a trademark. It's got her logo on nearly every page. It's got three or four other different registered trademarks that she puts in there. We should be able to ask those questions, but that evidence should come in in a timely manner during discovery and not come in at the 11th hour or the 13th hour, in a summary judgment response. Thank you. So EC also points to evidence of what it calls copying, but the evidence is just that Craftsmith wanted to offer a competing product and use the life planner's physical specifications as a template on which to base its design. EC presented no evidence that Craftsmith targeted the 11-element product design trade dress as a source identifier. You need intent to deceive, not just intent to copy a useful or attractive design. Otherwise, the second person to market will always prove the first to market has trade dress rights, and that's circular, and it's not the law. So EC also claims longtime use of its 11-element product design trade dress, which, by the way, is very general. If you read those 11 elements, they don't specify particular colors. It's just colorful and general. It's trying to thread the needle to avoid the fact that it has changed consistently over the years. The general arrangement has remained the same. The general idea that it's fun and playful has remained the same, but so many others have used the same ideas, and there's evidence of that in the record. And there's also admissions from Erin Condren herself. She said there's no two years that are alike. They've been responsive to their customer base over the years. They've added and dropped features from one year to the next, and they've changed the art and graphics every year to keep things fresh and interesting. So the district court made no error in entering summary judgment on the failure of the evidence, and this court should affirm. Thank you, counsel. Whoops. Any further questions from the panel? Judge Phillips? None from me. Thank you. Judge Moritz? None here. Thanks. Okay. Your time has expired.